UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 9:16-CR-80146-ROSENBERG/BRANNON

UNITED STATES OF AMERICA,

v.

ERIC GRANITUR,

        Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION
## FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL

**This Cause** is before the Court on Defendant's Motion for Post-Verdict Judgment of Acquittal or New Trial. *See* DE 201. The Government responded. DE 206. For the reasons set forth below, the Court hereby denies Defendant's Motion for Post-Verdict Judgment of Acquittal or New Trial.

### I.    BACKGROUND

This case arises from two real estate closings which were conducted by Defendant Eric Granitur's title company, Live Oak Title. The Government alleges that seller George Heaton offered incentives to buyers to purchase condominium units at the Vero Beach Hotel and Spa, including payment of buyers' down payments on the purchase price and closing costs (commonly called "cash-to-close"), payment of buyers' sales contract deposits, and cash rebates. Buyers of condominium units at the Vero Beach Hotel financed their purchases by submitting loan applications, financial records, and other information to financial institutions to obtain mortgages. Borrowers were required to truthfully and accurately disclose certain information, including the source of the borrower's down payment and settlement charges, the amount of cash provided by the borrower, and the amount of the borrower's closing costs paid by the seller. The

Government alleges that escrow agents were required to truthfully and accurately prepare and distribute to the financial institutions a settlement statement, known as a "HUD-1," in preliminary form prior to the closing of escrow for review and approval, and in final form at the closing of escrow. The estimated and final HUD-1 forms must accurately reflect, among other information, the sales price, the closing funds provided by the borrower, and all of the seller's contributions. The escrow agent was responsible for receiving and holding in trust in an escrow account mortgage loan proceeds from the financial institutions that financed the purchases of condominium units and disbursing those loan proceeds to parties to the transaction only after final approval by the financial institutions.

In the Second Superseding Indictment, the Government alleged that Defendant Eric Granitur was an attorney and escrow agent who operated title company, Live Oak Title. Defendant conducted closings for the sales of Vero Hotel condominium units from seller George Heaton to buyer Stephen McKenzie. The Second Superseding Indictment charged Defendant Eric Granitur with three counts: one count of Conspiracy to Commit False Statements in violation of 18 U.S.C. § 371 (Count 1) and two counts of False Statements in violation of 18 U.S.C. § 1014 (Counts 2 and 3). With respect to Count 1, the Second Superseding Indictment alleged that Defendant and his coconspirators carried out the conspiracy by using a variety of means, including:

    a. not disclosing incentives in the purchase and sale agreements, the buyers' mortgage loan applications, the property appraisal reports, and the HUD-1 forms submitted to the financial institutions that financed purchases of condominium units at the Vero Beach Hotel;
    b. misrepresenting and causing to be misrepresented the amount of seller credits to buyers in purchase and sale agreements, loan applications, HUD-1 forms and other documents submitted to the financial institutions that financed purchases of condominium units at the Vero Beach Hotel;
    c. misrepresenting and causing to be misrepresented the true sale price in purchase and sale agreements, loan applications, HUD-1 forms and other

       documents submitted to the financial institutions that financed purchases of condominium units at the Vero Beach Hotel;
d. deducting and causing to be deducted the amount of the buyers' cash-to-close and other incentives from the portion of the loan proceeds due to seller at closing;
e. falsely representing and causing to be represented the fact that buyers had paid cash deposits outside of closing;
f. providing and causing cash rebates to be provided to buyers after closing; and
g. causing an attorney at the law firm representing coconspirator George Heaton to draft documents that purported to characterize the incentives as lease back and equity sharing agreements.

The False Statement Counts allege that Defendant knowingly, with the intent to influence a lending action of a financial institution, made, caused to be made, and aided and abetted the making of, false statements on the HUD-1s related to a closing on February 5, 2009 (Count 2) and a closing on April 7, 2009 (Count 3).

The case proceeded to a jury trial on June 11, 2018. On June 15, 2018, the jury returned a guilty verdict as to all three counts. Now before the Court is Defendant's Motion for Judgment of Acquittal or a New Trial.

## II. LEGAL STANDARD

The standard for a Federal Rule of Criminal Procedure 29(c) Motion for Judgment of Acquittal is as follows:

> In considering a motion for the entry of a judgment of acquittal, a district court must view the evidence in the light most favorable to the government, and determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. The prosecution need not rebut all reasonable hypotheses other than guilt. The jury is free to choose between or among the conclusions to be drawn from the evidence presented at trial, and the district court must accept all reasonable inferences and credibility determinations made by the jury. The District Court's determination that the evidence introduced at trial was insufficient to support the jury's verdict of guilt is [an] issue of law entitled to no deference on appeal.

*United States v. Miranda*, 425 F.3d 953, 959 (11th Cir. 2005) (citation omitted).

The Court may grant a motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. The Eleventh Circuit has stated that:

> The decision to grant or deny a new trial motion based on the weight of the evidence is within the sound discretion of the trial court. An appellate court may reverse only if it finds the decision to be a clear abuse of that discretion. While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really "exceptional cases." Applying these principles, courts have granted new trial motions based on weight of the evidence only where the credibility of the government's witnesses had been impeached and the government's case had been marked by uncertainties and discrepancies.

*United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir. 1985) (citations omitted). "Where a motion for new trial argues that the court committed errors during the trial, the convicted defendant has the burden of showing that (1) some error was in fact committed and (2) that such error was prejudicial to him. Even if the defendant has made such a showing, a new trial is not warranted unless the error affected the defendant's substantial rights." *United States v. Blair*, No. 8:08-CR-450-T-33EAJ, 2010 WL 1997639, at *2 (M.D. Fla. May 19, 2010) (citations omitted).

### III. ANALYSIS

Defendant makes the following arguments for why he is entitled to judgment of acquittal or a new trial. He argues that (1) the evidence was insufficient to prove Defendant's guilt as to all three counts; and (2) Defendant's fair trial rights were unfairly and prejudicially compromised by the exclusion of Defense Proposed Jury Instruction 13A. DE 201. The Court addresses the arguments in turn.

a. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support the jury's verdict as to all three counts. As to the False Statement regarding the April 7, 2009 closing (Count 3), Defendant states that:

> [t]he evidence is undisputed that Mr. Granitur neither prepared the April 7, 2009 HUD-1 Settlement Statement nor attended the closing. . . . The only witness offering testimony concerning the April 7, 2009 closing for Unit 104 was Kelly Levy, who acknowledged she did not "do the actual closing" and was not at the Live Oak office the day of the closing. Ms. Levy was only able to speculate about the events transpiring that day, and had no direct or indirect knowledge of Mr. Granitur's role in the closing or his awareness of the cash to close at that closing.

DE 201 at 9. Defendant states that even the Government's witness George Heaton did not offer any testimony that Defendant participated in the April 7, 2009 closing. *Id.* at 10.

Defendant states that the evidence as to Counts 1 and 2 differed from that of Count 3 because Kelly Levy, who handled the February 5, 2009, closing testified. *Id.* According to Defendant, neither Ms. Levy nor Mr. Heaton testified regarding an agreement or involvement of Defendant in a conspiracy. *Id.* Accordingly, Defendant argues that the evidence was insufficient to support his convictions.

The Government responds that it offered evidence that:

> (1) George Heaton, the seller, agreed to pay, and did pay, the cash-to-close for Stephen McKenzie, the buyer, as an incentive for McKenzie to purchase Vero Hotel condo units; (2) Heaton agreed to pay, and did pay, through Live Oak Title's escrow account, large sums of money post-closing as additional incentives for McKenzie to purchase his condos; (3) per his agreement with Heaton, McKenzie brought no cash to the closings charged in Counts 2 and 3 of the Second Superseding Indictment; and, consequently, (4) the HUD-1 settlement statements for both real estate closings were false.

DE 206 at 3–4. Accordingly, the Government states that, as to Count 1, the only determination the jury had to decide was whether Defendant "knew of the unlawful purpose of the plan and willfully joined in it." *Id.* To support the jury's finding that Defendant knew of the unlawful

5

purpose of the conspiracy and willfully joined in it, the Government points to various emails Defendant received regarding the incentives Heaton offered to McKenzie and the sale and purchase contract, *see id.* (citing Gov't Exs. 79, 80, 20) and an email from Defendant to Heaton and McKenzie the day before the closing stating that he would stay on top of the closing, DE 206 at 4 (citing Gov't Ex. 17).

The Government also states that "[t]he jury received bank records and other documents proving the payment of incentives that, Kelly Levy explained, could only have been authorized by Defendant Granitur" and that these payments were part of the side agreement between Heaton and McKenzie that was not disclosed to the banks. DE 206 at 5 (citing Gov't Exs. 52, 46, 47, 16). The Government points to the testimony of Kelly Levy "that she would not have conducted the February 5, 2009 closing without McKenzie's cash-to-close unless authorized by Eric Granitur." DE 206 at 5.

The Court agrees with the Government that, under either the Rule 29(c) standard for judgment of acquittal or the Rule 33 standard for a new trial, there was sufficient evidence to find that Defendant conspired to make false statements and made false statements with respect to the February 5, 2009 and the April 7, 2009 closings.

With respect to Count 1, the Court instructed the jury that the elements the jury had to find were:

(1) two or more persons in some way agreed to try to accomplish a shared and unlawful plan;
(2) the Defendant Eric Granitur knew the unlawful purpose of the plan and willfully joined in it;
(3) during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and
(4) the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

6

DE 178 at 10–11. The Court also instructed the jury that "[a] person may be a conspirator without knowing all the details of the unlawful plan or the names and identities of all the other alleged conspirators. If the Defendant Eric Granitur played only a minor part in the plan but had a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion, that's sufficient for you to find the Defendant Eric Granitur guilty." *Id.* at 11.

As to the False Statement Counts (Counts 2 and 3), the Court instructed the jury that the elements the jury had to find were:

> (1) the Defendant Eric Granitur made a false statement or report;
> (2) the Defendant Eric Granitur did so knowingly and with the intent to influence an action of the institution described in the indictment regarding an application, advance, commitment, or loan, or a change or extension to any of those; and
> (3) the deposits of the institution were insured by the Federal Deposit Insurance Corporation.

*Id.* at 12.

The Court finds that the evidence introduced by the Government at trial, and on which the Government relies in its Response to Defendant's Motion for New Trial, was sufficient to sustain Defendant's conviction of all three counts. *See* DE 206 at 2–6. The Government presented the testimony of George Heaton that he engaged in a conspiracy with Stephen McKenzie whereby McKenzie brought no cash to the closings and consequently the HUD-1 statements were false. *See, e.g.*, Tr. Tran. June 13, 2018, at 237:19–243:22. The Government also presented emails received by Defendant with documents detailing the cash-to-close incentives Heaton offered to McKenzie and the sale and purchase contract. *See, e.g.*, Test. of Christopher Russell, Tr. Tran. June 11, 2018, at 237:6–244:16 (discussing Gov't Ex. 20). The Government pointed to the testimony of Kelly Levy that she would never have conducted the February 5, 2009 closing without McKenzie's cash-to-close unless she received authorization from

Defendant. Tr. Tran. June 12, 2018, at 229:1–20. Accordingly, the Court finds that the evidence was sufficient to convict Defendant as to all three counts and Defendant's Motion for Judgment of Acquittal or New Trial based on sufficiency of the evidence is denied.

      b. <u>Defense Proposed Jury Instruction 13A</u>

Defendant argues that the Court's decision not to include Defense Proposed Jury Instruction 13A unfairly prejudiced Defendant's trial rights. Defendant states that the Government's case was focused on the falsehoods and omissions in two HUD-1 Settlement Statements and that there was no dispute that Defendant did not prepare either HUD-1. DE 201 at 4. Defendant proposed the Defense Proposed Instruction 13A which the Court did not include in its final instructions to the jury. Defense Proposed Instruction 13A read: "The Court specifically instructs you that although disbursement of loan proceeds not in accordance with the HUD-1 is improper, it is not itself illegal unless done as part of a scheme or conspiracy." DE 172 at 16 (relying on *United States v. Gutierrez-Acanda*, 628 F. App'x 642, 646 n.2 (11th Cir. 2015)). During deliberations, the jury sent out a question asking: "From #603 on HUD Settlement Statement—is it okay for Live Oak to Disperse funds per directive of seller's atty's that are different from settlement statement or must the entire amount go to seller?" DE 180 at 2. The Court responded that "[y]ou should rely upon your recollection of all of the evidence, including documents and witness testimony, presented during the trial and follow the law as the Court has instructed you." *Id.* Defendant argues that "[t]he absence of that requested instruction failed to inform the jury as to whether differing loan disbursements constitute a crime. In fact and in law, it does not unless the disbursement is done as part of a scheme or conspiracy." *Id.* at 6. Accordingly, Defendant states that he is entitled to a new trial because there is uncertainty as to whether the jury was actually misled.

8

The Government responds that "[t]he Court did not misdirect or mis-instruct the jury in any way. The Court gave the pattern instructions which thoroughly and accurately covered all of the elements of the charged crimes, in a very simple and straightforward case." DE 206 at 7. The Government argues that the case on which Defendant relied for his proposed instruction, *Gutierrez-Acanda*, 628 F. App'x at 646 n.2, was different factually and procedurally in that *Gutierrez-Acanda* involved a much more complicated conspiracy than the conspiracy at issue in the present case and that the instruction given in *Gutierrez-Acanda* was agreed-to and in response to a question sent out by the jury. DE 206 at 7. The Government argues that the pattern jury instructions clearly spelled out the elements of the crimes which the Government had to prove; that the Court must presume that the jurors followed the Court's instructions; and that "[i]t certainly cannot be presumed that . . . the jury . . . did not know or understand the distinction between disbursements not in accordance with the HUD-1 and the elements of a false statement charge as instructed by the Court." *Id.* at 9.

The Court properly instructed the jury on the law and, thus, rejects Defendant's argument that it should have included Defense Proposed Instruction 13A. The jury instructions were taken from the Eleventh Circuit Pattern Jury Instructions and made clear the elements of the crimes with which Defendant was charged. Assuming that the jury followed the instructions, as the Court must, *United States v. Roy*, 855 F.3d 1133, 1187 (11th Cir. 2017), it is clear that the jury could not have convicted Defendant for simply dispersing loan proceeds not in accordance with the HUD-1s. Rather, by finding that the Government proved each element beyond a reasonable doubt, the jurors found that Defendant conspired to make false statements and made the false statements knowingly with intent to influence the actions of the banks. *See* Jury Instrs., DE 178 at 10–12.

The Court also notes that this case differs from *Gutierrez-Acanda*, the case on which Defendant relies for Defense Proposed Instruction 13A. In that case, the "jury sent out a question regarding the legality of disbursing loan proceeds prematurely. The parties agreed to a statement that, although the early disbursement of loan proceeds is improper, it is not itself illegal unless done as 'part of a scheme or conspiracy to defraud.'" 628 F. App'x at 646 n.2. The Court notes that, in *Gutierrez-Acanda*, the Court's instruction came in response to a jury question, not as part of the Court's instructions to the jury before the jury deliberations. The Court also notes that the parties agreed to the instruction. In this case, Defendant proposed that Defense Proposed Instruction 13A be part of the Court's final instructions to the jury before the jury deliberations. The Court does not believe that it would have been appropriate to give this special instruction in anticipation of potential jury confusion. Additionally, the Court notes that in this case when the jury sent out this question, "From #603 on HUD Settlement Statement—is it okay for Live Oak to Disperse funds per directive of seller's atty's that are different from settlement statement or must the entire amount go to seller?," DE 180 at 2, Defendant did not request an instruction similar to the instruction in *Gutierrez-Acanda*; rather, Defendant agreed that, if the Court was not going to answer the question with "yes," it was acceptable for the Court to inform the jurors that they should rely on their recollection of the evidence presented at trial, Trial Tr., June 15, 2018, at 93:18–99:11. Accordingly, the Court finds that there was no error in its decision to exclude Defense Proposed Instruction 13A and that Defendant's Motion for Post-Verdict Judgment of Acquittal or New Trial as to his argument regarding Defense Proposed Instruction 13A is denied.

## IV. CONCLUSION

It is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Post-Verdict Judgment of Acquittal or New Trial [DE 201] is **DENIED**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 9th day of August, 2018.

*/s/ Robin L. Rosenberg*
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE