UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-80146-CR-ROSENBERG/BRANNON(s)(s)

UNITED STATES OF AMERICA

vs.

GEORGE HEATON,
DEBORAH DENTRY BAGGETT, and
ERIC GRANITUR,

      **Defendants.**
_____/

**UNITED STATES' SENTENCING MEMORANDUM**

The United States files this sentencing memorandum to assist the Court in assessing the roles of the various defendants in this case. Defendant Stephen McKenzie's role is discussed herein as well, and a copy of this pleading will be filed under his case, number 18-14014-cr-Rosenberg/Maynard.

A.    Background

The Vero Beach Hotel and Club, a/k/a, Vero Beach Hotel and Spa ("Vero Hotel") was developed in two phases. Phase one involved the renovation of an existing hotel. Phase two involved the construction of a new building adjacent to the existing hotel. In or about early 2006, Orion Bank (now Iberia Bank) provided two loans for the construction of both phases in the approximate amount of $20 million for each phase, one loan to Vero Beach Hotel and Club, LLC, and the other to Vero Lodging, LLC. Both companies were controlled by defendant Heaton, the developer of the project. The two loans were cross-collateralized, meaning a default on one loan could result in a default on the other. The financing agreements contained conditions including the

requirement that a certain number of condominium units be sold within a specified time frame. The primary source of repayment for the two loans was the sale of Vero Hotel condo units.

### 1. False Statements in Connection with Orion Bank Construction Loans

Defendant Baggett's guilty plea was based on false statements to Orion Bank in connection with the modification of one of the two Orion Bank loans. In November 2006, defendant Heaton executed a loan modification agreement with Orion Bank, increasing the amount of Vero Lodging, LLC's loan to $23 million, subject to conditions which included, among others, that "purchase and sale contracts shall be bona fide third party, arms-length transactions" and that the contracts be accompanied by the buyers' deposit funds. Defendants Heaton and Baggett then undertook to provide false information to Orion Bank in order to satisfy these loan modification conditions, and thereby influence Orion Bank to provide the increased loan amount.

For example, in December 2006, defendant Baggett used the name and social security number of one of her Accountability Plus, Inc. clients ("A") as a buyer on a purchase and sale agreement for unit 424, and caused the agreement to be submitted to Orion Bank, without A's knowledge and consent, for the purpose of satisfying the Vero Lodging, LLC loan modification agreement. Ms. Baggett used the name and social security number of Accountability Plus, Inc. client "B" as a buyer on a purchase and sale agreement for unit 423, and caused the agreement to be submitted to Orion Bank, without B's knowledge and consent, for the purpose of satisfying the Vero Lodging, LLC loan modification agreement. Defendant Baggett also provided A's and B's personal financial information to Orion Bank, without their knowledge and consent.

Defendant Heaton provided his own cash to give the appearance of deposit money coming from Ms. Baggett's clients A and B. Heaton transferred $489,500 from one of his bank accounts

into a bank account of the Palm Beach County law firm that represented him in connection with Vero Hotel business, designating the funds to be used as deposits for the purchase of units 423 and 424. The law firm then transferred the $489,500 from its account into a bank account of an Indian River County title company, to be used as deposits for the purchase of units 423 and 424.

        2.      **Vero Hotel Unit Sales to Other Buyers with Concealed Incentives**

During the period from 2007 through 2009, defendant Heaton sold a number of Vero Hotel units with incentives concealed from the banks that provided mortgages to the buyers of those units. Several of those transactions are detailed in defendant Heaton's Fact Proffer, and include the five units sold to defendant McKenzie, which were closed by defendant Granitur.

        3.      **Vero Beach Hotel and Club's Impending Default on its Orion Loan**

By 2008, defendant Heaton was struggling to sell Vero Hotel units, and, consequently, struggling to meet payoff deadlines for both the Vero Beach Hotel and Club and Vero Lodging commercial loans with Orion Bank. Vero Beach Hotel and Club had reduced its Orion Bank commercial loan to about $4 million, but was missing deadlines to pay off the loan. In a letter dated November 5, 2008, Orion Bank reminded defendant Heaton that the Vero Beach Hotel and Club commercial loan had been due on October 31, 2008, but agreed to an extension until November 30, 2008. Vero Beach Hotel and Club did not pay off the loan on November 30, 2008. In a letter dated December 19, 2008, Orion Bank notified defendant Heaton that the Vero Beach Hotel and Club commercial loan was again overdue, but agreed to extend the payoff date to January 31, 2009. Mr. Heaton and Orion Bank eventually agreed that the proceeds from the sale of four units to defendant McKenzie, closed by defendant Granitur on February 5, 2009, would be used to help pay off the overdue Vero Beach Hotel and Club commercial loan.

3

B.     **Loss Calculations**

The government bears the burden of establishing the loss attributable to the defendant by a preponderance of the evidence. United States v. Cavallo, 790 F.3d 1202, 1232 (11th Cir. 2015). In summary, the loss on each unit was derived from the difference between the unpaid principal balance of the mortgage loan and the amount the victim lender was able to recover by selling the property after foreclosure. See USSG §2B1.1, comment. (n.3(E)(ii)). This is an appropriate method of calculating loss in a mortgage fraud case. United States v. Cavallo, 790 F.3d at 1233.

The actual loss to the victim banks that provided mortgages to Vero Hotel unit buyers under fraudulent circumstances totals approximately $3.8 million, calculated as shown in the chart attached as Exhibit 1. The condo units serving as collateral for those mortgage loans were rental units and produced income during the time period from when the banks foreclosed and took ownership until the banks sold the units after foreclosure. The rental income paid to the banks represents an offset to their losses, and totaled approximately $505,000.00, calculated as shown in the chart attached as Exhibit 2.

Defendant Heaton's guilty plea encompasses Vero Hotel units that were financed under fraudulent circumstances which have resulted in losses, and some which have resulted in no loss because the buyers are making their mortgage payments. The total loss number of $3,323,249 attributable to defendant Heaton includes offsets from rental income.

Defendant Baggett's loss calculation is different from the other defendants due to the nature of her plea agreement. For defendant Baggett's guilty plea, the loss to Iberia Bank (the successor to Orion Bank) was calculated based on the unpaid principal balance of the Vero Lodging loan at default, minus the value of the 14 units serving as collateral for that loan as determined by a state

court judge after litigation over the value of those 14 condo units.  See Vero Lodging Final Judgment of Foreclosure (unpaid principal balance), and Deficiency Judgement Opinion (collateral value), attached as compilation Exhibit 3.  The government and defense agreed to use the state court's collateral valuation for the purpose of calculating defendant Baggett's loss figure.  Because of this agreement, an offset to loss based on rental income received by Iberia Bank for the 14 units was not included.

The losses attributable to defendants Granitur and McKenzie are based only on the five units purchased by McKenzie and closed by Granitur.  After deducting offsets for rental income, the total loss amount is $1,637,423.  In his objections to the Presentence Investigation Report ("PSR), defendant Granitur argued that the Court should take into account the Florida real estate market conditions in calculating the loss amount resulting from the fraud.  D.E. 219, at 9.  The Eleventh Circuit specifically rejected that argument in United States v. Cavallo, 790 F.3d at 1235 (The Sentencing Guidelines "'require foreseeability of the loss of the unpaid principal, but do not require foreseeability with respect to the future value of the collateral.'" (quoting United States v. Wendlandt, 714 F.3d 388, 394 (6th Cir. 2013) (citation omitted)).

**C.  Defendant Stephen McKenzie**

Stephen McKenzie met George Heaton in approximately 2007.  McKenzie had access to wealthy clients through his business, STS Construction, which built custom homes.  Heaton hoped that McKenzie could steer clients to the Vero Hotel development.  In May 2008, Heaton pitched McKenzie on buying Vero Hotel units with incentives.  By June 2008, Heaton and McKenzie were discussing the potential purchase of 10 Vero Hotel units.  In August 2008, Heaton loaned McKenzie $60,000.00, which McKenzie never paid back.  In November 2008, McKenzie signed a purchase

5

and sale agreement for four Vero Hotel units but had no financing. Between November 2008, and January 2009, emails and other documents show, defendants Heaton and Baggett tried to assist McKenzie in finding a bank that would provide a mortgage for the purchase. See, e.g., United States Response to Defendant Baggett's Objections to PSR, D.E. 214, at 2. In January 2009, Heaton reached out to his contact at Orion Bank, and Orion agreed to provide McKenzie a mortgage with the understanding that Heaton would use the proceeds of the sale to help pay off the Vero Beach Hotel and Club commercial loan.

Defendant Heaton paid Stephen McKenzie to buy five Vero Hotel units. For the first four units, McKenzie and Heaton executed an agreement and a lease which gave control of the units back to Heaton to rent, thereby creating revenue that was to be used to pay McKenzie's mortgage, condo fees, and taxes. Government Exhibit ("GX") 53 (Agreement and Lease, attached to email chain dated February 5, 2009, from Kelly Levy to Ryan Aiello). McKenzie purchased the fifth unit subject to the same terms. GX 20. In effect, Stephen McKenzie acted as a "straw buyer" who served the purpose of generating sufficient funds to pay off the Vero Beach Hotel and Club commercial loan.

**D.      Defendant Eric Granitur**

Defendant Granitur was the gatekeeper, the fiduciary, the person with the duty to call off the closings and protect the millions of dollars of lender money that was entrusted to him. Defendant Granitur could have, and should have, counseled his client Stephen McKenzie to not enter into fraudulent real estate deals. Instead, he aided and abetted the fraudulent transactions.

At trial, and in his post-trial motion, and in his objections to the PSR, defendant Granitur blamed everyone else – his client Stephen McKenzie, the seller George Heaton, the law firm

representing George Heaton, even the south Florida real estate market.  This attitude reflects a shocking disregard for the legal, ethical, and fiduciary obligations of a member of the Bar.  Defendant Granitur deserves a sentence within the guidelines range as calculated in the PSR.

    Respectfully submitted,

    BENJAMIN G. GREENBERG
    UNITED STATES ATTORNEY

By:    */s/ Joseph A. Capone*
    JOSEPH A. CAPONE
    Special Assistant United States Attorney
    Court Number A5500459
    400 7th Street, S.W.
    Washington, D.C.  20219
    Office: (202) 730-4912
    joseph.capone@fhfaoig.gov

By:    */s/ Daniel E. Funk*
    DANIEL E. FUNK
    Assistant United States Attorney
    Court Number A5501915
    101 South U.S. Highway 1, Suite 3100
    Fort Pierce, FL 34950
    Tel: 305-905-7509
    daniel.funk@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 17, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

>*/s/ Joseph A. Capone*
>Joseph A. Capone
>Special Assistant United States Attorney